UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CALVIN ALLEN d/b/a ) | |
| BRICK HOUSE PRODUCTIONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:03CV138 RWS |
| ) | |
| STATE OF MISSOURI, DEPARTMENT ) | |
| OF DEFENSE PUBLIC SAFETY, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Calvin Allen attempted to hold a music concert in Kennett, Missouri in 2001. Although he was able to obtain a caterer's permit from state and city officials to sell wine and beer at the concert, Allen was unable to obtain a permit to sell hard liquor by the drink. Allen cancelled the concert based on his inability to get approval to sell hard liquor by the drink. He filed the present suit alleging that Defendants violated his constitutional rights. Defendants have filed motions for summary judgment. I will grant the motions because Allen did not have a constitutional right to obtain a permit to sell liquor by the drink.

### *Background*

Allen is an African American businessman who resides in Springfield, Missouri. At the time period relevant to this litigation, Allen owned the Brick House Lounge in Springfield. The Lounge, which had a seven-day liquor license, served alcohol and had live entertainment. In addition to the Lounge, Allen ran a separate entity called Brick House Productions that promoted and produced live entertainment, such as nostalgia acts, hip-hop, and rhythm and blues acts, in various venues throughout Missouri.

In 1999 or 2000, Allen considered promoting and producing an event in Kennett, Missouri. Allen visited Kennett to survey the possibility of holding a Clarence Carter concert there. He visited different establishments that sold liquor by the drink and observed a state liquor license on the wall. From his observations, Allen assumed that he could obtain a caterer's permit to sell liquor by the drink at a concert in Kennett. He did not go to Kennett's City Hall to check on Kennett's ordinances regarding the sale of liquor.

Allen decided to hold a Clarence Carter concert in Kennett on March 9, 2001. On February 21, 2001, Allen went to Kennett and met with Kennett City Clerk, Brenda Privett. and City Attorney, Terry McVey, to get a letter from the City approving a temporary caterer's permit to sell liquor by the drink at the March 9th concert. Allen only sought a liquor by the drink permit to sell hard liquor, he was not interested in, nor did he request a temporary permit to sell beer or wine at the concert. According to Allen, McVey responded that it would be no problem to issue such a permit.

Allen returned to Springfield and contacted the Missouri Liquor Control office in Springfield to obtain a caterer's permit for his concert in Kennett. On February 28, 2001, Allen received a checklist from liquor control agent Kelly Finkbiner setting out the information Allen would need to obtain a caterer's permit to sell liquor by the drink at his concert. The state liquor control department requires an applicant to enter a contract for the leased premises for which the caterer's permit is to be issued, have permission from the premises owner to sell alcohol, and obtain a letter from the city granting permission to serve alcohol. Allen had to comply with these conditions.

On March 1, 2001, Allen entered a contract with the American Legion Hall in Kennett

that allowed him to hold his concert there on March 9, 2001, and to serve alcohol. The contract was entered through Riggs Hardware of Kennett. Allen made these arrangements with Defendant Ronnie Morgan who oversees the leasing of the American Legion building. After obtaining this contract Allen began making calls to City Hall about getting a letter of approval from the city to sell liquor by the drink.

On March 5, 2001, Allen received a fax from city counselor McVey in response to Allen's request for an approval to sell liquor by the drink. The letter set forth McVey's opinion that the City of Kennett had no ordinances relating to the approval or operation of such a license. In other words, the City of Kennett did not have an ordinance that would allow the issuance of a caterer's permit to sell liquor by the drink.

After receiving this information, Allen thought his concert was in jeopardy because he would not be able to sell liquor by the drink. Allen felt that McVey's opinion was a pretext to prevent him from getting a temporary caterer's permit. Allen was under the impression that the state liquor control division could issue a caterer's permit to sell liquor by the drink in Kennett.

On March 6th or 7th, Allen faxed his contract with the American Legion Hall and McVey's letter to agent Finkbiner in the liquor control office in Springfield. Jim Anderson was the district supervisor of liquor control in Springfield. He took over the handling of Allen's permit request. Sometime in the late afternoon or early evening of March 6th or 7th Anderson informed Allen that a caterer's permit to sell liquor by the drink could not be issued because of City Attorney McVey's opinion letter. Missouri law requires a local ordinance allowing such a permit to be issued before the state can issue such a permit. Because Kennett did not have such an ordinance, the state could not issue the permit requested by Allen.

Allen did not give up on trying to get a permit to sell liquor by the drink. On March 7th or 8th, Allen assigned the task of getting the caterer's permit to his agent Edward Washington. Washington worked for Allen in Brick House Productions. Washington contacted McVey by phone between ten a.m. and twelve noon on March 8, 2001 to determine if the permit might still be issued. McVey told Washington that the issuance of a permit was up to the state liquor control board and referred Washington to Anderson. McVey told Washington that Kennett never had issued a permit to sell liquor by the drink at a staged event. McVey told Washington that issuing a permit was all right with him if Anderson approved it but it was Anderson's call. Washington called Anderson who reiterated that a caterer's permit to sell liquor by the drink was not allowed by any Kennett ordinance. Anderson told Washington that he would do the best he could regarding a permit but that his hands were tied because Kennett lacked an ordinance authorizing such permits.

At his deposition, Washington stated that in his experience of producing concerts for Brick House, a caterer's permit is sought by Brick House long before a scheduled event.

After his conversation with Anderson, Washington called McVey back to seek a permit. McVey restated his position that it was Anderson's call. Washington called Anderson back but he was gone for the day.

On March 9th, 2001, the day of the concert, Washington called Anderson around nine or ten in the morning and told Anderson that McVey would consent to whatever decision Anderson made. Anderson restated that he could not issue a permit to sell liquor by the drink due to the lack of a Kennett ordinance in that regard but, in an attempt to accommodate Allen, Anderson would approve a license to sell beer and wine at the event even though Allen had not requested a

permit to sell beer and wine. Missouri state law allows the issuance of a permit to sell beer and wine even though a city does not have an ordinance regarding a temporary caterer's permit to sell liquor by the drink. Anderson told Washington that he could not issue the beer and wine permit because it was outside of his territory, but because Anderson had worked with Allen in the past, Anderson said that he would call the liquor control agent in charge of Kennett, Don Pickard, and tell him that there was no objection to issuing a beer and wine permit.

Washington called Pickard who said that he had talked to Anderson and that a permit to sell beer and wine would be approved. Pickard told Washington to bring the permit application to him expeditiously so the permit could be issued.

Washington called Allen, who was in Kennett, and told him of the availability of a beer and wine permit and told him to get the application to Pickard right away. Allen was very unhappy with this decision. Throughout discovery Allen has made his position clear that he did not want a beer and wine permit, rather he wanted a liquor by the drink permit because hard liquor is "a main part of any concert venue" and patrons must "have alcohol in order to entertain and enjoy the show." Allen's position was that it was a common policy that if he could not serve hard liquor there would be no concert.

Allen received another fax from McVey that approved Anderson's recommendation of a beer and wine permit. Because he was unable to obtain a liquor by the drink permit, Allen alleges that he was forced to cancel the show and relayed the cancellation to Clarence Carter's agent. At around six twenty-two p.m. Allen received a fax from Carter's agents confirming the cancellation of Carter's appearance for the concert and rescheduling an appearance by Carter in Kennett on April 6, 2001.

The opening act for the concert, Outcast Rhythm and Blues had already arrived in Kennett for the show. Allen had them play at the American Legion Hall as scheduled.

On the night of the concert, Allen arranged with Defendant Morgan, through his agent Joanne Davis, to rehire the American Legion Hall on April 6, 2001 to hold the Clarence Carter concert. No document was created to reflect the rental of the Hall by Allen on April 6, 2001. According to Allen, he was going to use the Hall on April 6, 2001 free of charge.

On March 19, 2001, Allen faxed a six-page letter to the City of Kennett addressed to the then mayor, Defendant Charles Brown. Allen's letter recited his efforts to obtain a permit to sell liquor by the drink at the concert on March 9th. He expressed his frustration at being refused a permit. He stated that it "is a prerequisite of this type of entertainment event that" liquor by the drink be available to patrons of the event. Allen requested a meeting with the Brown and the City Counsel in an attempt to get approval for a temporary caterer's permit to sell liquor by the drink at the rescheduled concert on April 6th.

On March 27, 2001, Brown replied to Allen's letter. Brown's written response stated that Kennett did not have an ordinance that would allow the issuance of such a permit and that McVey's opinion letter of March 5, 2001 sets forth the position of the City of Kennett.

On March 28, 2001, Allen sent another letter to Brown asking for a letter of approval, or disapproval, from the city regarding Allen's desire to obtain a permit to sell liquor by the drink at the April 6th concert. McVey issued a letter to Allen, dated April 2, 2001[1], restating the position

---

[1] The material facts submitted by Allen and Kennett both state that Allen received McVey's letter five days before the rescheduled concert on April 6, 2001. McVey's letter also noted that the City had received Allen's letter of March 28, 2001 on the day McVey sent his response. McVey's letter states that the delay in receipt of Allen's letter was because Allen faxed it to the wrong number.

that the City did not have an ordinance that would allow the issuance of such a permit. McVey confirmed that the City had no objection to the issuance of a caterer's permit to sell beer and wine at the concert.

Allen did not submit a completed caterer's application for a caterer's permit to the liquor control division for the April 6, 2001 concert. Nor did Allen submit McVey's letter of April 2, 2001, to the liquor control division.

On April 6, 2001, Allen contacted Morgan by phone and told him that the concert would not be held that night and that Allen wanted to reschedule the concert again. Morgan told Allen that the Hall was not available on upcoming Friday and Saturday nights until February 2002. Allen did not inquire about the availability of the Hall on other nights of the week nor did Morgan address such availability. Allen asserts that Mr. Brumley, the Kennett Chief of Police was with Morgan during the phone call. Allen heard Brumley ask to speak with Allen on the phone. Allen declined to talk with Brumley.

In his Second Amended Complaint Allen alleges that Defendants City of Kennett, McVey, Brown, Anderson, and Morgan discriminated against him in violation of federal law. Allen alleges Defendants' actions (1) violated his right to enter contracts under 42 U.S.C. § 1981; (2) violated his right to equal protection under the 14th Amendment via 42 U.S.C. § 1983; and (3) involved a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985.

Defendants have moved for summary judgment.

*Legal Standard*

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

This lawsuit concerns whether Plaintiff's Allen's federally protected rights were violated when he attempted to hold a concert in Kennett, Missouri. Allen's claims arise out of his inability to obtain a temporary caterer's permit to sell liquor by the drink at the proposed concert. He asserts that he could not get a permit because he was the victim of racial discrimination by Defendants. Defendants respond that Allen did not receive the permit because such a permit was not authorized by Missouri law.

There is no inherent federal right to sell liquor. Under Missouri law, "the traffic of liquor

is not a lawful business except as authorized by express legislation, and no person has the natural or inherent right to engage in it." Jordan v. City of Centerville, 119 S.W.3d 214, 216 (Mo. Ct. App. 2003). Missouri's liquor control law, codified at R.S.Mo. §§ 311.010 *et seq.*, is a comprehensive scheme for the regulation and control of the manufacture, sale, possession, transportation and distribution of intoxicating liquor. Id. It is unlawful for any person to sell liquor in Missouri without first obtaining a license to do so. R.S.Mo. §311.050.

Under Missouri law, "no license shall be issued for the sale of intoxicating liquor, other than [beer and wine] ... in any incorporated city having a population of less than nineteen thousand five hundred inhabitants, until the sale of such intoxicating liquor, by the drink ... shall have been authorized by a vote of the majority of the qualified voters of the city." R.S.Mo. § 311.090. This requirement does not apply to any charitable, fraternal, religious, service or veteran's organization in the city (R.S.Mo. 311.090.2) or to resorts and restaurants in the city (R.S.Mo. § 311.095).

A caterer who possesses a valid state and local liquor license need not obtain a caterer's license for each city the caterer delivers in, so long as the city permits the caterer to deliver alcoholic beverages within the city." R.S.Mo. § 311.485.3.

Allen's Brick House Lounge had a license to sell intoxicating liquor in Springfield, Missouri. He used this license to obtain caterer's permits to sell liquor by the drink at concerts produced by Brick House Productions throughout Missouri. Allen assumed that he could obtain a caterer's permit to sell liquor by the drink in Kennett at his concerts on March 9, 2001 and on April 6, 2001.

The City of Kennett has a population of less than nineteen thousand five hundred

inhabitants. It has never held a vote to authorize the sale of liquor by the drink. As a result, the city does not have an ordinance which permits a caterer to sell liquor by the drink. Such a caterer's permit cannot be issued in Kennett because it would violate R.S.Mo. § 311.090.

Allen applied for a temporary caterer's permit to sell liquor by the drink in Kennett for his March 9, 2001 concert. Defendants McVey and Anderson told Allen that the permit could not be issued because an ordinance did not exist to allow the issuance of the permit. In an effort to accommodate Allen, McVey and Anderson approved a permit to sell beer and wine at his event. Allen never applied for a beer and wine permit. He believed his concert would only be successful if he was allowed to sell liquor by the drink.

On March 9, 2001, Allen cancelled Clarence Carter part of the concert but the opening act played that night at the American Legion Hall. Under the belief that he was being refused a liquor by the drink permit based on some sort of misunderstanding or discrimination, Allen rescheduled the Clarence Carter act at the American Legion Hall to be held on April 6, 2001. Allen attempted to enlist the help of Kennett's mayor Defendant Brown to get a liquor by the drink permit for the April 6, 2001 show. Brown and McVey restated that an ordinance did not exist that would allow such a permit to be issued. They told Allen that they would approve a beer and wine permit.

Allen never filed with the state liquor control division an application for a caterer's permit to sell liquor by the drink at the concert scheduled for April 6, 2001. On April 6th, the day of the concert, Allen called Defendant Morgan and told him that he was cancelling the show for that night. When Allen asked to reschedule the Hall for a latter date Morgan told him that Fridays and Saturdays were booked until February 2002.

*Section 1983 claim*

Allen asserts that he was denied a caterer's permit based on racial discrimination. He asserts that his rights to equal protection and due process guaranteed by the 14th Amendment were violated. He raises these claims of discrimination under 42 U.S.C. § 1983.

The essential elements of a section 1983 claim are: (1) a violation of a constitutional right; (2) committed by a state actor; (3) who acted with the requisite culpability and causation to violate the constitutional right. Kuha v. City of Minnetonka, 365 F.3d 590, 606 (8th Cir. 2004).

Allen's claim under section 1983 fails because he cannot establish that his constitutional rights were violated by Defendants. Allen alleges that his right to equal protection and due process was violated when he was denied a permit to sell liquor by the drink. Missouri law prohibits the issuance of such a permit because the City of Kennett did not have an ordinance that provides for such a permit. Allen has not offered any evidence that such permits were issued to anyone who did not fall within an exception to R.S.Mo. § 311.090 (charitable, fraternal, religious, service or veteran's organizations) or R.S.Mo. §311.095 ( resorts and restaurants). Allen asserts that his business is an "amusement place" that was entitled to an exception under R.S.Mo. § 311.098. Allen did not offer such information to Defendants at the time he sought a permit nor does he offer any evidence in support of that claim in the present lawsuit.

Nor can Allen's claim be supported by the fact that there was a delay in issuing a beer and wine permit for his March 9, 2001 concert. It is undisputed that Allen never applied for such a permit and it was only offered by Anderson in an attempt to accommodate Allen.

As a consequence, Defendants McVey, Brown, and Anderson did not violated Allen's constitutional rights when they refused to approve a caterer's permit to sell liquor by the drink at Allen's concert.

Defendant City of Kennett is not liable for such a violation. Municipal liability under section 1983 is premised on the existence of two prerequisites: (1) a policy, practice, or custom must be attributable to the City through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Because Allen's constitutional rights were not violated by McVey and Brown, Allen cannot establish municipal liability for his claims.

Allen's claims against Defendant Morgan concern the rental of the American Legion Hall. Morgan is not a state actor nor did he have any role in determining whether Allen should be issued a permit to sell liquor by the drink. Moreover, the evidence in the record reflects that Morgan had no objection to Allen serving liquor by the drink at the concert. Allen has not provided any evidence that Morgan could have or did in fact violate Allen's rights under the 14th Amendment.

*Section 1981 claim*

Section 1981 guarantees all citizens the right to make and enforce contracts. To establish a prima facie case of racial discrimination under section 1981, Allen must show that (1) he is a member of a racial minority; (2) Defendants intended to discriminate against him on the basis of race; and (3) the discrimination concerned an area enumerated in section 1981. Wortham v. American Family Ins. Group, 385 F.3d 1139, 1141 (8th Cir. 2004).

Allen's claims against McVey, Brown, and Anderson concern the ability to obtain a caterer's permit. For the sake of argument, I will assume that a permit request can be construed as an attempt to enter a contract. As discussed earlier, however, a permit was not issued because it was not authorized by Missouri law. Allen has not presented any evidence that a white person

similarly situated to Allen was issued such a permit. As a result, Allen has failed to establish any evidence of discrimination under section 1981.

The section 1981 claim against Defendant Morgan concerns the rental of the American Legion Hall after April 6, 2001. Allen asserts that Morgan breached Allen's contract when Morgan told Allen that the Hall was booked for Fridays and Saturday's until February 2002. Alternatively, Allen asserts that Morgan denied Allen the right to enter into a contract to lease the Hall after April 6, 2001.

Based on the evidence in the record, Morgan leased the Hall to Allen for a concert on March 9, 2001. That was the only contract that was reduced to a writing. Although Allen cancelled the Clarence Carter act of the concert, another act that Allen booked played at the Hall on March 9th. Allen made verbal arrangements with Morgan's agent to use the Hall again on April 6, 2001, to hold the rescheduled Carter concert. Allen stated in his deposition that the Hall was being provided to him at no charge on April 6th. Allen realized several days before the concert that he would not be able to obtain a caterer's permit to sell liquor by the drink. Yet he waited until the day of the event, April 6th, to call Morgan and cancel the rental for that night. Allen then asked Morgan to reschedule the event. Morgan responded that the Hall was not available on upcoming Friday and Saturday nights until February 2002. Allen did not inquire about the availability of the Hall on other nights of the week nor did Morgan address such availability. Allen asserts that Mr. Brumley, the Kennett Chief of Police was with Morgan during the phone call. Allen heard Brumley ask to speak with Allen on the phone. Allen declined to talk with Brumley.

Allen alleges that Morgan breached a contract by not allowing Allen to reschedule the

concert on an upcoming Friday or Saturday.  A written contract does not exist for that rental of the Hall.  Allen has not offered any evidence of a contract provision to allow him to reschedule the concert at the Hall.  As a result, Allen has not offered any evidence that Morgan breached a contract with Allen in violation of section 1981.

Alternatively, Allen asserts that Morgan discriminated against him on the basis of race when he said that the Hall was unavailable on Fridays and Saturdays for the upcoming ten months.  The facts of the case establish that Morgan had already rented the Hall to Allen twice, on March 9th and on April 6th.  Allen paid for the rental of March 9th and was going to use the Hall for free on April 6th if he had not cancelled the concert.  Even if Morgan's statement regarding the availability of the Hall on future Friday and Saturday nights was untrue, Allen has not offered any evidence that this information was based on a discriminatory intent.  Allen asserts that when he spoke with Morgan on April 6th the Chief of the Police, Mr. Brumley, was with Morgan.  Brumley asked to speak with Allen on the phone.  Allen refused.  This evidence does not create an inference of a discriminatory intent on behalf of Morgan.  Allen's failure to present evidence of discriminatory intent by Morgan is fatal to the establishment of his prima facie case under section 1981.  Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004).

*Section 1985 claim*

Allen asserts that he was the victim of a conspiracy by Defendants to deprive him of his civil rights in violation f 42 U.S.C. § 1985.  To state a claim under the equal protection provisions section 1985(3), Allen must allege (1) a conspiracy; (2) for the purpose of depriving another of the "equal protection of the laws, or of equal privileges and immunities under the laws;" (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a

legal right. Federer v. Gephardt, 363 F.3d 754, 757-758 (8th Cir. 2004). The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. Id. at 758 n.3. Speculation and conjecture are not enough to prove a conspiracy exists. Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999).

Allen alleges that Defendants in this matter conspired for the purpose of denying him a caterer's permit to sell liquor by the drink and therefore prevented him from doing business in the City of Kennett. In his brief in opposition to summary judgment, Allen asserts that Anderson was the "main player" in denying Allen's right to get a liquor by the drink permit. As discussed earlier, Allen was not entitled to such a permit. The only fact that Allen relies on in support of his conspiracy claim is that Police Chief Brumley was with Morgan when Allen called Morgan about rescheduling the concert on April 6th. This fact does not create an inference that Morgan was in a conspiracy with McVey, Brown and Anderson to deprive Allen of his equal rights to obtain a caterer's permit. Such a conclusion is based on speculation and conjecture and does not establish a claim for civil conspiracy.

*Conclusion*

Based on the ordinances in the City of Kennett, Plaintiff Allen was not entitled to a temporary caterer's permit to sell liquor by the drink at his concert events in Kennett. The denial of that permit did not violate Allen's constitutional or statutory rights. Nor did a discriminatory intent prevent Allen from entering contracts in Kennett. Allen also failed to provide evidence that Defendants conspired to deprive him of his constitutional or statutory rights. As a result, Defendants are entitled to summary judgment in this matter.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Jim Anderson's motion for summary judgment [#125] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendants City of Kennett, Charles Brown and Terry McVey's motion for summary judgment [#128] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Ronnie Morgan's motion for summary judgment [#134] is **GRANTED**.

**IT IS FURTHER ORDERED that** all other pending motions in this matter are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2005.